**IN THE UNITED STATED DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Best Western International Incorporated,

Plaintiff,

v.

Anderson Hospitality LLC, et al.,

Defendants.

No. CV-25-03077-PHX-MTM

**REPORT AND RECOMMENDATION**

TO THE HONORABLE STEPHEN M. McNAMEE, SENIOR UNITED STATES DISTRICT JUDGE:

Pending before the Court is Plaintiff's Motion for Default Judgment. (Doc. 17.) This Report and Recommendation is filed pursuant to General Order 21-25.[1] The Court will recommend that Plaintiff's Motion be granted.

---

[1] General Order 21-25 states in relevant part:

> When a United States Magistrate Judge to whom a civil action has been assigned pursuant to Local Rule 3.7(a)(1) considers dismissal to be appropriate but lacks the jurisdiction to do so under 28 U.S.C. § 636(c)(1) due to incomplete status of election by the parties to consent or not consent to the full authority of the Magistrate Judge,
>
> IT IS ORDERED that the Magistrate Judge will prepare a Report and Recommendation for the Chief United States District Judge or designee.
>
> IT IS FURTHER ORDERED designating the following District Court Judges to review and, if deemed suitable, to sign the order of dismissal on my behalf:
>
> Phoenix/Prescott: Senior United States District Judge Stephen M. McNamee.
> . . .

**I. Background**

Plaintiff Best Western International Incorporated ("Plaintiff" or "Best Western") filed a Complaint in this matter on August 22, 2025, against Defendants Anderson Hospitality LLC ("Anderson"), Ankit Panchal ("Panchal"), and Nikita Panchal (collectively "Defendants"). (Doc. 1.) In its Complaint, Plaintiff alleges the following, in pertinent part:

- Plaintiff is a non-profit corporation organized under Arizona law with its headquarters located in Phoenix, Arizona. Defendant Anderson is a California Limited Liability Company with its principal place of business in Bakersfield, California. The sole shareholder of Anderson is Panchal, and he is a resident of Pittsburg, California. Defendant Nikita Panchal is Defendant Panchal's spouse and is named solely for community property purposes.

- Anderson is the owner of a hotel located at 2688 Gateway Drive in Anderson, California (the "Hotel"). Anderson executed a Membership Application and Agreement with Best Western on December 7, 2021. Defendant Anderson designated Panchal as its Voting Member for the membership. As the Voting Member, Defendant Panchal agreed, acknowledged, and accepted personal liability to answer for debts, liabilities, and obligations associated with the Membership, Member, and the Property and to be jointly and severally liable to Best Western. Nikita Panchal is Panchal's spouse; she also acknowledged and agreed to be bound by the Membership Agreement.

- Among Defendants' contractual obligations was the requirement to timely pay all fees, charges, and assessments. Each month, Best Western sent Defendants monthly invoices with respect to the membership for the Hotel. Those invoices included an "aging summary," showing the current balance due, any amounts past due by 30 days, any amounts past due by 60 days, any amounts past due by 90 days, and any amounts past due by 120 days or more. Most charges were billed in arrears for reservation activity that occurred the month before.

- Defendants were regularly past due on their payment obligations, and Best Western sent Defendants several letters concerning outstanding amounts. Past due balances were also shown in the "aging summary" of their monthly statements. In an attempt to cure the payment defaults, Defendants signed a payment plan, but defaulted on the installments owed. In addition to payment defaults, Defendants failed to comply with a number of other brand standards and membership requirements, to include failing multiple Quality Assurance assessments, failing to provide a staffed front desk for 24 hours daily seven days a week, and failing to satisfy the terms of a Conditional Extension Agreement.

- On February 4, 2025, Best Western sent a letter to Defendants notifying them of the Board's decision to terminate the membership (the "February Letter"). In the February Letter, Best Western asked Defendants to make arrangements as soon as possible to satisfy the balances owed on the Best Western account and to pay the charges for fees and dues for the remainder of the fiscal year. The February Letter also reminded Defendants that they were required by the Membership Agreement and Regulatory Documents to de-brand and cease using Best Western's trademarks and logos (the "Best Western Marks") by February 19, 2025, and included a request that Defendants return a "Logo Removal Checklist and Affidavit" and submit photographs showing that all Best Western Marks had been removed.

- On March 1, 2025, Best Western billed early termination damages for fees and dues owed by Defendants for the rest of the fiscal year in the amount of $28,788.84, plus other charges, fees, and interest owed under the membership agreement for a total "current" amount due of $30,992.78. Combined with the past due amounts owed on the February statement ($51,034.78), the March 1 statement reflected an outstanding balance of $82,027.56. On May 20, 2025, Best Western sent a demand letter to Defendants with respect to the outstanding amounts owed to Best Western in the amount of $84,642.47 for pre-termination services, accrued interest, and fees and dues for the rest of the fiscal year. The letter also referenced the Defendants' refusal to timely de-brand Best Western's trademarks from the Hotel and damages owed for trademark infringement. Best Western reminded Defendants of the trademark damages that Defendants had agreed to in the Membership Agreement and explained that damages were accruing at a rate of $568.23 per day, which as of May 20, 2025, was $50,572.47 (89 days of infringement). As of June 24, 2025, Defendants were still displaying Best Western signage at the Hotel in violation of the Membership Agreement and trademark law and Best Western sent a second letter to the Hotel about the Defendants' ongoing use of Best Western's trademarks.

- Despite demand, Defendants failed to pay Best Western as required by the Membership Agreement and Best Western regulatory documents. Because of Defendants' breach of the Membership Agreement for their failure to pay their outstanding balance and their unlawful use of Best Western Marks without authorization, Best Western filed a Complaint against Defendants. As of July 1, 2025, the total account balance owed to Best Western, with accrued interest was $87,183.14.

On September 5, 2025, Best Western served the Summons and Complaint on Anderson; on September 14, 2025, Defendants Panchal and Nikita were served. (Docs. 10, 11, 12); *see* Fed. R. Civ. P. 4(e)(2)(A)-(C), 4(h)(1); Ariz. R. Civ. P. 4.1(d) and (i). Accordingly, Defendants were properly served. Defendants have not responded to the

Complaint.

Pursuant to Plaintiff's request, the Clerk entered default against Defendants on October 30, 2025.[2] (Docs. 13, 14.) Best Western now moves for default judgment against Defendants on Count I of the Complaint (Breach of Contract), Count II of the Complaint (Breach of the Implied Covenant of Good Faith and Fair Dealing), and Count III of the Complaint (Breach of Contract for Post-Terminational Use of Best Western's Trademarks).[3] (Doc. 17.) No response to the Motion has been filed.

## II. Motion for Default Judgment

### A. Legal Standard

Under Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once a party's default has been entered, the district court has discretion to grant default judgment against that party. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In assessing a motion for default judgment, the district court first "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter judgment in the first place."). Once jurisdiction is satisfied, the court must determine whether default judgment is proper under the *Eitel* factors. *See Eitel v.McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Specifically, a court should consider:

(1) the possibility of prejudice to the plaintiff[;]

---

[2] Plaintiff certified that its Application for Default was served on Defendants by mail to: Anderson Hospitality, LLC 10080 Wolfe Road SW3-200 Cupertino, CA 95014; Ankit Panchal 1183 Cheshire Circle Danville, CA 94506; and Nikita Panchal 1183 Cheshire Circle Danville, CA 94506. (Doc. 13.)

[3] Best Western has filed a Notice of Voluntary Dismissal of the remaining claims against Defendants (Counts IV-VII). (Doc. 16.)

(2) the merits of plaintiff's substantive claim[;]

(3) the sufficiency of the complaint[;]

(4) the sum of money at stake in the action;

(5) the possibility of a dispute concerning material facts;

(6) whether the default was due to excusable neglect[;] and

(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72. In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

**B. Discussion**

**1. Jurisdiction**

"When entry of default is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli*, 172 F.3d at 712. Here, Plaintiff asserts claims related to the alleged infringement of its trademark and claims jurisdiction pursuant to 15 U.S.C. § 1121. Accordingly, the Court has jurisdiction over this matter. (Doc. 1.)

**2. *Eitel* Factors**

Having determined that this Court has jurisdiction, the Court will examine whether entry of default judgment is proper under the *Eitel* factors.

**a. The First, Fifth, Sixth, and Seventh *Eitel* Factors**

When Defendants have not responded or participated in any litigation, the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Industries Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. March 27, 2020).

The first factor weighs in favor of default judgment because denying Plaintiff's Motion will leave it "without other recourse for recovery," *PepsiCo, Inc. v. California Security Cans.*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002), and prejudice would exist if Plaintiff's Motion were denied because it would lose the right to a "judicial resolution" of

its claims. *Elektra Entertainment Group, Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). The fifth factor weighs in favor of default judgment because the well-pleaded factual allegations in the Complaint are taken as true, and there is no "genuine dispute of material facts" that would preclude granting the Motion. *PepsiCo*, 238 F.Supp.2d at 1177. The sixth factor considers whether the default was due to excusable neglect. Here, Defendants' failure to participate after being personally served does not indicate that default was due to excusable neglect. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F.Supp.2d 1065, 1071-1072 (D. Ariz. 2006). The seventh factor -- favoring decisions on the merits -- generally weighs against default judgment; however, "the mere existence of Rule 55(b) indicates that 'this preference, standing alone, is not dispositive,'" *PepsiCo*, 238 F.Supp.2d at 1177, and is not sufficient to preclude the entry of default judgment in this case. *Warner Bros. Entertainment Inc. v. Caridi*, 346 F.Supp.2d 1068, 1073 (C.D. Cal. 2004) (explaining that the seventh *Eitel* factor "standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered" and courts have concluded that "this factor does not weigh very heavily"). Here, a decision on the merits is impossible, given that Defendants failed to appear.

In sum, the first, fifth, sixth, and seventh factors weigh in favor of default judgment.

**b. The Second and Third *Eitel* Factors**

The second and third *Eitel* factors -- the merits of the claim and the sufficiency of the complaint -- are "often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F.Supp.3d 948, 962 (N.D. Cal. 2019).

"The elements of breach of contract claim are (1) a contract exists, (2) breach of the contract, and (3) resulting damages." *Granite State Ins. Co. v. CME Prof'l Services LLC*, 2019 WL 399923, at *3 (D. Ariz. Jan. 31, 2019). Best Western alleges that it entered into a Membership Agreement with Defendants under which Defendants agreed to pay Best Western for fees, dues, charges and assessments, and costs of all goods or services provided or ordered through Best Western as well as interest at the rate of 1.5% per month. (Doc. 1 ¶¶ 30-32, 68-74.) Defendants failed to make payments required by the Membership

Agreement, and, thus, breached the parties' contract.

In addition to its terms, the contract contains an implied covenant of good faith and fair dealing. *Wells Fargo Bank v. Arizona Laborers*, 38 P.3d 12, 28 (Ariz. 2002). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). Defendants failed to honor their agreement with Best Western – they failed to make payments as promised and have ignored multiple demands from Best Western for payment. Defendants' refusal to honor their payment obligations to Best Western is a breach of the implied covenant of good faith and fair dealing.

Because the Court takes these allegations as true, *Geddes*, 559 F.2d at 560, Plaintiff "has stated a claim on which [it] may recover." *Vietnam Reform Party*, 416 F.Supp.3d at 962. Thus, the second and third *Eitel* factors support an entry of default judgment.

**c. The Fourth *Eitel* Factor**

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Twentieth Century Fox Film Corp.*, 438 F.Supp.2d at 1071.

Here, Best Western agreed to provide Defendants with reservation systems and marketing campaigns, as well as the option to participate in the collective purchasing of hotel equipment, furnishings, and supplies. (Doc. 1.) Further, Best Western provided Defendants with use of the trade name, trademarks, service marks, logs, in connection with the Hotel pursuant to a limited, non-exclusive license, as set forth in the parties' Membership Agreement. (*Id.*) In exchange, Defendants agreed to pay annual dues, monthly fees, membership fees, and other assessment/charges, and to abide by all obligations established in the Regulatory Documents. (*Id.*) Plaintiff is requesting $161,053.04, and claims this amount is not significant considering it includes services already provided to Defendants, for which they have not paid.

Taking Plaintiff's allegations as true, the Court finds that the amount requested is

reasonable and not disproportionate or inappropriate. Thus, the fourth *Eitel* factor weighs in favor of default judgment.

Overall, the Court finds that the *Eitel* factors weigh in favor of entering default judgment against Defendants.

**3. Damages**

Having found that entry of default judgment is proper under the *Eitel* factors, the Court will turn to the issue of damages. Unlike the allegations in the Complaint, the Court does not take allegations relating to damages as true. *Geddes*, 559 F.2d at 560; *see also TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Indeed, plaintiffs have the burden of "proving up" damages, and "if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). Courts may rely on declarations submitted by the plaintiff in determining appropriate damages. *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at *6 (D. Ariz. Dec. 2, 2019) (citing *Philip Morris USA, Inc.*, 219 F.R.D. at 498).

According to its Motion and accompanying Declaration, the total account balance owed to Best Western for pre-termination services, accrued interest, and fees and dues for the rest of the fiscal year was $87,183.14. (Doc. 17-1, Exh. A.) Pursuant to the Membership Agreement, the liquidated damages calculation for unauthorized use of Best Western's trademarks and logos (the "Best Western Marks") is 15% of the Hotel's average daily rates, times the total number of rooms, times the number of days the Hotel has been displaying the Best Western logo without authorization. As of the date of termination, the Hotel's average daily rate was $97.12 and it had a total of 39 guest rooms. Fifteen percent (15%) of the Hotel's average daily rate is $14.57. The daily damages per day for the Hotel's infringement pursuant to the Membership Agreement is $568.23. Defendants used Best Western's Marks without authorization for a minimum of 130 days (from February 19, 2025, through June 29, 2025). Thus, the liquidated damages owed by Defendants to Best Western for Defendants' unauthorized use of Best Western's Marks is $73,869.90 ($568.23 x 130 days = $73,869.90).

Plaintiff is requesting that judgment be entered in its favor and against Defendants in the total amount of $161,053.04 ($87,183.14 + $73,869.90), accruing pre-judgment interest at the rate of 1.5% per month, from July 1, 2025, until the date of the entry of the judgment, and accruing post-judgment interest pursuant to 28 U.S.C. § 1961 from the date of entry of the judgment until the judgment is paid in full. Plaintiff additionally requests that the Court allow it to file a motion for attorneys' fees and costs should the Court grant default judgment.

The Court finds that Plaintiff's requested relief accurately calculates the damages it is entitled to and supported by Plaintiff's Declaration. Therefore, the Court finds it appropriate to award Plaintiff $161,053.04. Additionally, the Court finds that Plaintiff is entitled to its attorneys' fees and costs pursuant to the Membership Agreement. [4]

## III. Conclusion and Recommendation

Having reviewed Plaintiff's Motion and the underlying documents in the record, the Court finds that the *Eitel* factors weigh in favor of granting default judgment in favor of Plaintiff for the requested amount.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Default Judgment (Doc. 17) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that Judgment be entered in favor of Plaintiff Best Western International, Inc., and against Defendants, in the amount of $161,053.04, accruing pre-judgment interest at the rate of 1.5% per month, from July 1,

---

[4] While Arizona statutory law does not authorize an award of attorneys' fees in an uncontested action arising out of a contract in the context of a default, A.R.S. § 12–341.01(A), the Membership Agreement at issue provides, in pertinent part, "[i]n the event that Member breaches any obligation to Best Western, Member is liable to Best Western for all attorneys' fees, costs, and expenses incurred by Best Western in connection with the breach or violation, whether or not suit is filed." When parties contractually agree to pay attorney fees, § 12–341.01 does not alter the parties' agreement. *See McDowell Mountain Ranch Comm. Assoc. v. Simons*, 165 P.3d 667, 670 (Ariz. Ct. App. 2007) (noting that it is "well-settled in Arizona that '[c]ontracts for payment of attorneys' fees are enforced in accordance with the terms of the contract'") (citations omitted); *Dorn v. Robinson*, 762 P.2d 566, 574 (Ariz. Ct. App. 1988) (awarding prevailing party attorneys' fees where they were provided for by contract).

2025, until the date of the entry of this judgment, and accruing post-judgment interest pursuant to 28 U.S.C. § 1961, from the date of entry of this judgment until the judgment is paid in full;

**IT IS FURTHER RECOMMENDED** that Plaintiff have no later than 21 days after entry of Judgment to file an application for attorneys' fees and costs.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 15th day of January, 2026.

Michael T. Morrissey

Honorable Michael T. Morrissey
United States Magistrate Judge